## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **ENERGY PROFESSIONALS, LLC, UTILITY SALES MANAGEMENT, LLC, and UTILITIES MARKETING GROUP, LLC,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**KENNETH POMELLA, COREY MIX, and UNKNOWN JOHN DOES,**<br><br>**Defendants.** | **Case No. 8:15-cv-02470-MSS-EAJ** |

## TEMPORARY RESTRAINING ORDER

Upon consideration of the Plaintiffs' Verified Complaint, Motion for Temporary Restraining Order, and Declaration of Laura Zepeda, and having determined that:

1.      The Plaintiffs, Energy Professionals, LLC ("EPROS"), Utility Sales Management, LLC ("USM") and Utilities Marketing Group, LLC ("UMG") (collectively "Plaintiffs") are affiliated with AGR Group, LLC ("AGR").

2.      Through its various business units, AGR offers outsourcing of energy related customer needs, including outbound telemarketing, consulting services, customer service, customer retention, lead generation and appointment setting, field services and canvassing, and third party verification.

3.      For several months, the Plaintiffs allege they have received calls from EPROS customers indicating that they have been contacted by third-party brokers who already have the customers' contact information, usage, contract expiration

dates, account numbers, and pricing information. These customers have allegedly

contacted the Plaintiffs because EPROS is their broker and should be the only entity

in possession of this detailed information about their accounts.

4.     The Plaintiffs claim that the information referenced by these third-party

brokers would not be available to them unless they, or someone else acting in concert

with them, accessed the Plaintiff's trade secrets, proprietary information, and other

confidential materials, in violation of statutory and contractual obligations.

5.     Until October 14, 2015, the Plaintiffs represent that they were unable to

determine how these third-party brokers were accessing the Plaintiffs' trade secrets

and confidential materials.

6.     On October 14, 2015, the Plaintiffs allege that James Herman

("Herman"), an individual who is not employed by EPROS, contacted an EPROS

subcontractor, Jerrime Newberry ("Newberry"), in hopes of selling an Excel

spreadsheet of business leads to Newberry.   When Newberry opened the

spreadsheet, he allegedly recognized it as a confidential EPROS customer list

because it included some of Newberry's customers and matched the formatting of

EPROS lists.  Confronted with these circumstances, Herman indicated that he did not

know the origin of the list, but recognized that the list had been sent via email by

Defendant, Corey Mix ("Mix"). The email chain shows that the EPROS list originated

from an email account in the name of johnnyrockets29@yahoo.com to Corey Mix**.** The

Defendant, Mix is a former employee of UMG. The Plaintiffs allege that Mix has falsely

represented himself as being affiliated with EPROS in order to compete with EPROS, interfere with its business relationships, and solicit clients.

7.      The Plaintiff alleges that the author of the spreadsheet attached to the email chain is identified in the metadata as "Ken" and a search for the johnnyrockets29@yahoo.com email address led to the page of an individual identifying himself as "Vincent Antonelli."   Laura Zepeda represented in her declaration that the profile picture and other photos for this account depict Defendant, Kenneth Pomella ("Pomella").

8.      The Defendant, Pomella, is a former manager of application development services for USM and a current independent contractor for the company. He is subject to the terms and covenants contained in a Confidentiality, Non-Compete, and Non-Solicitation Agreement. The Plaintiffs allege that Pomella improperly exceeded his access to the Plaintiffs' trade secrets, proprietary information, and other confidential materials, and shared them with competitors. The scope of the unauthorized access is not entirely known. However, based on an email that was discovered containing a spreadsheet of information related to EPROS' clients, it is believed that Pomella exported EPROS' proprietary information and shared it with individuals who were not employed by EPROS. The spreadsheet contained 1,761 entries from the proprietary database of EPROS' commercial clients' contact information including but not limited to: names, contact information, account numbers, e-mail address of the business' decision maker, the start and end dates of the contract brokered for them with the supplier, the annual usage, and the usage throughout the

3

contract term. See Exhibit A. The information related to usage and the start and end dates of the contracts is not public knowledge. The information is compiled and maintained by EPROS.

9.    The database also contains the actual contract rate that EPROS successfully brokered for the client. This is also not public knowledge. In fact, it is information that is only known by the business client, the supplier, and EPROS. EPROS educates its clients on their energy options and rights under deregulation, analysis clients' existing energy providers, and negotiates with energy suppliers to provide their clients with the best and most efficient energy service possible. After examining the energy needs of commercial clients, EPROS requests proposals from various energy suppliers. EPROS then negotiates with suppliers to provide service contracts to their clients. EPROS provides ongoing support to monitor the transaction, provide assistance with the transition to ensure a smooth changeover, and reassess the client's needs as the time for renewal approaches. Again, only EPROS, the client, and the supplier have knowledge of when the renewal time approaches. Suppliers do not provide this information without the client's consent. The information allows EPROS to maintain a competitive advantage over its competition and timely address its customers' needs.

10.    EPROS has incurred significant costs in the creation and development of this information. The system where this information is stored is a proprietary system. It contains information related to what the client pays the supplier for the service and the company's margins of profit.

11. On September 23, 2015, EPROS received a call from a customer saying she was returning a call from EPROS general manager Thomas Colby regarding her energy renewal. Colby had not called her, but someone else had, fraudulently misappropriating Colby's identity and the EPROS brand. The customer also received a phony email, purporting to be from Colby and bearing the EPROS name. That email is attached as Exhibit F to the Verified Complaint.

12. The Plaintiffs allege that the phony email was in fact a phishing scam designed to trick the customer into doing business with someone purporting to be EPROS. The email actually came from the domain "energyprofessionals.co," which the Plaintiffs assert is owned anonymously through DomainsByProxy.com.

13. The Plaintiffs allege that Pomella and Mix are working together – possibly with other unknown John Doe Defendants – in effort to defraud the Plaintiffs and deceive their customers. In support of their allegations, the Plaintiffs produced Exhibit D to their Verified Complaint, which is an email chain allegedly between the Defendants.

14. The Plaintiffs claim they have suffered and will continue to suffer irreparable injury due to Defendants' conduct.

15. The Plaintiffs claim they have no adequate remedy at law. They claim that greater injury will be inflicted upon the Plaintiffs by denial of a temporary restraining order than would be inflicted upon the Defendants by granting such relief. They claim it is in the public's interest that the requested relief is granted to prohibit the Defendants from violating federal and state law and any contractual duties to the

Plaintiffs. Moreover, the Plaintiffs state that the requested relief is necessary to prevent further harm to the Plaintiffs' pending resolution of the preliminary injunctive relief which is being requested by the Plaintiffs.

16.	A temporary restraining order should be issued when the plaintiff can demonstrate: (1) a likelihood of success on the merits of the claims; (2) the irreparable nature of the threatened injury; (3) the potential harm that might be caused to the opposing party or others if the order is issued; and (4) the public interest, if any.  See M.D. Fla. R. 4.05(b)(4).  See also Parker v. State Board of Pardons & Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  These factors can operate as a sliding scale, such that if one factor weighs heavily in favor of a party, the other factors may become less important.  See, e.g., Louis v. Meissen, 530 F. Supp. 924, 925 (S.D. Fla. 1981) ("A showing that Plaintiffs will be more severely prejudiced by a denial of a temporary restraining order or injunction than will Defendants should it be granted, lessens the standard likelihood of success that must be met."). "No particular quantum of proof is required as to each of the four criteria." Laboratories Roldan v. Tex Int'l, Inc., 902 F. Supp. 1555, 1565 (S.D. Fla. 1995).

17.	A likelihood of success on the merits is generally the most important factor when considering whether to grant a motion for preliminary injunction. Schiavo v. Schiavo, 357 F. Supp.2d 1378, 1383 (M.D. Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir. 2005). In order to satisfy this element, the movant must show "only *likely*, rather than *certain* success." Home Oil Co., Inc. v. Sam's East, Inc., 199 F. Supp.2d 1236, 1249 (M.D. Ala. 2002)(emphasis in original). At the preliminary injunction stage, a

district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is "appropriate given the character and objectives of the injunctive proceeding." <u>Levi Strauss v. Sunrise International Trading, Inc</u>., 51 F.3d 982, 985 (11th Cir. 1995). Based on the evidence presented, the Court finds that the Plaintiffs have met the factors for issuance of a Temporary Restraining Order.

It is hereby **ORDERED, ADJUDGED, AND DECREED** that:

A. The Motion is **GRANTED** to the extent provided herein.

B. In accordance with Rule 65(b)(2), Fed. R. Civ. P., this Order shall remain in full force and effect until 5:00 p.m. on November 12, 2015, at which time it shall expire by its terms unless extended by this Court upon good cause shown, by consent of parties, or by entry of a subsequent preliminary injunction by this Court.

C. The Defendants, Pomella, Mix, and Unknown John Does are immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of the Defendants, until hearing and thereafter until further Order of this Court from:

1) Using, disclosing, or transmitting for any purpose the Defendants' trade secrets, proprietary material, and other confidential information;

2) Continuing to use or sell the Plaintiffs' trade secrets, proprietary material, and other confidential information;

3) Intruding or accessing in any way the Plaintiffs' computer systems, including any proprietary material and other confidential information;

4) Using the EPROS mark;

5) Using any email address to offer for sale or sell any services or goods bearing the Plaintiffs' registered or unregistered trademarks;

6) Engaging in any act which is likely to dilute the distinctive quality of the Plaintiffs' marks and/or injure the Plaintiffs' reputation and goodwill;

7) Representing or implying that the Defendants are in any way sponsored by or affiliated with, or have been endorsed, approved or licensed by the Plaintiffs;

8) Continuing to tortuously interfere with the Plaintiffs' business operations.

9) Destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records or documents (including date or information maintained in computer media) in the Defendants' possession or control which pertain to or which relate to any of the events alleged in the Verified Complaint in this action;

10) Effectuating assignments or transfers, forming new entities or associations, or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this order;

11) Assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1 through 10 above.

D. The Defendants, Pomella, also is immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Pomella, until a hearing is held and thereafter until further Order of this Court from:

1) Violating the terms, conditions, and covenants contained in the Confidentiality, Non-Compete, and Non-Solicitation Agreement dated August 13, 2014.

2) Violating the terms, conditions, and covenants contained in the Independent Contractor Agreement dated July 21, 2015.

3) Soliciting, recruiting, or otherwise initiating any contact directly or indirectly with any current employees or independent contractors to leave his/her employment or terminate their contractual relationship with the Plaintiffs.

E. The Plaintiffs are directed to obtain or attempt to obtain immediate service of process of this Order on the Defendants.

F. The Court concludes that after considering all of the evidence in the record and all of the factors under Federal Rule of Civil Procedure 65(c), the Plaintiffs shall be required to post a bond or cash in the amount of $50,000.00 (Fifty Thousand Dollars). Once the Defendants receive notice of the Order, the Defendants will

have an opportunity to suggest that the bond be increased to address a more substantial risk of harm should it later be determined that the injunction or restraining order was improvidently entered.

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of October, 2015.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record